# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**LUIS M. CASTEJÓN**,

    Plaintiff,

    v.

**COMMISSIONER OF SOCIAL SECURITY**,

    Defendant.

Civil No. 17-2386 (BJM)

## OPINION AND ORDER

Luis M. Castejón ("Castejón") seeks review of the Commissioner's finding that he is not disabled and thus not entitled to disability benefits under the Social Security Act (the "Act"). 42 U.S.C. § 423. Castejón contends the Commissioner's decision should be reversed because the administrative law judge ("ALJ")'s residual functional capacity ("RFC") finding and step five non-disability determination were not supported by substantial evidence. Docket Nos. 1, 19. The Commissioner opposed. Docket No. 22. This case is before me on consent of the parties. Docket Nos. 5, 7-8. After careful review of the administrative record and the briefs on file, the Commissioner's decision is **affirmed**.

## STANDARD OF REVIEW

After reviewing the pleadings and record transcript, the court has "the power to enter a judgment affirming, modifying, or reversing the decision of the Commissioner." 20 U.S.C. § 405(g). The court's review is limited to determining whether the Commissioner and his delegates employed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro v. Secretary of Health & Human Services*, 76 F.3d 15, 16 (1st Cir. 1996). The Commissioner's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Ortiz v. Secretary of Health & Human Services*, 955 F.2d 765, 769 (1st Cir. 1991). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'" *Visiting Nurse Association Gregoria Auffant, Inc. v. Thompson*, 447 F.3d 68, 72 (1st Cir. 2006) (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Secretary of Health & Human Services*, 819 F.2d 1, 3 (1st Cir. 1987).

A claimant is disabled under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is unable to engage in any substantial gainful activity when he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

Generally, the Commissioner must employ a five-step evaluation process to decide whether a claimant is disabled. 20 C.F.R. § 404.1520; *see Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Goodermote v. Secretary of Health & Human Services*, 690 F.2d 5, 6–7 (1st Cir. 1982). In step one, the Commissioner determines whether the claimant is currently engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If not, the disability claim is denied. At step three, the Commissioner must decide whether the claimant's impairment is equivalent to a specific list of impairments contained in the regulations' Appendix 1, which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt. P, App. 1. If the claimant's impairment meets or equals one of the listed impairments, he is conclusively presumed to be disabled. If not, the evaluation proceeds to the fourth step, through which the ALJ assesses the claimant's RFC and determines whether the impairments prevent the

claimant from doing the work he has performed in the past. An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 404.1520(e) and 404.1545(a)(1). If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. § 404.1520(e). If he cannot perform this work, the fifth and final step asks whether the claimant is able to perform other work available in the national economy in view of his RFC, as well as age, education, and work experience. If the claimant cannot, then he is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

At steps one through four, the claimant has the burden of proving he cannot return to his former employment because of the alleged disability. *Santiago v. Secretary of Health & Human Services*, 944 F.2d 1, 5 (1st Cir. 1991). Once a claimant has done this, the Commissioner has the burden under step five to prove the existence of other jobs in the national economy the claimant can perform. *Ortiz v. Secretary of Health & Human Services*, 890 F.2d 520, 524 (1st Cir. 1989). Additionally, to be eligible for disability benefits, the claimant must demonstrate that his disability existed prior to the expiration of his insured status, or his date last insured. *Cruz Rivera v. Secretary of Health & Human Services*, 818 F.2d 96, 97 (1st Cir. 1986).

## BACKGROUND

The following is a summary of the treatment record, consultative opinions, and self-reported symptoms and limitations as contained in the Social Security transcript.

Castejón was born on April 4, 1966, has an eighth grade education, does not speak English (but speaks Spanish), and worked in auto body repair and painting for sixteen years. Social Security Transcript ("Tr.") 40, 65, 90, 422, 445, 447, 452. On June 27, 2013, Castejón applied for disability insurance benefits, claiming to have been disabled since December 1, 2010 (alleged onset date) at 44 years of age[1] due to depression, high blood pressure, diabetes, and a lung condition. Tr. 40-41, 422-428, 446. He last met the insured status requirements on September 30, 2014 (date last insured). Tr. 441. The claim was denied initially (Tr. 81, 349) and on

---

[1] Castejón was considered to be a younger individual (Tr. 30), and "[i]f you are a younger person (under age 50), we generally do not consider that your age will seriously affect your ability to adjust to other work." 20 C.F.R. 404.1563(c).

reconsideration. Tr. 88-89, 354-355. A hearing before an ALJ was held on January 5, 2016. Tr. 37-80. On February 29, 2016, the ALJ found at step five that Castejón was not disabled as defined in the Act. Tr. 22, 33-32. Castejón requested review of the ALJ's decision, which the Appeals Council denied on November 2, 2017, rendering the ALJ's decision the final decision of the Commissioner. Tr. 1, 420. The present complaint followed. Docket No. 1.

**Treating physicians**

*Policlínica Familiar Campo Alegre*

Castejón was treated for diabetes mellitus at the *Policlínica Familiar Campo Alegre*. The record contains treatment notes from May 10, 2011 to April 17, 2013, which are mostly illegible. Laboratory results show high glucose levels. Tr. 117-141, 528-552.

*Dr. José Ortega Vélez*

Dr. José Ortega Vélez, internal medicine specialist, also treated Castejón from 2014 to 2015 for diabetes mellitus type II, hypertension, and diabetes neuropathy. Progress notes are illegible. Tr. 743-752.

*Hospital Dr. Cayetano Coll y Toste*

On April 15, 2015, Castejón was treated at the emergency room of Hospital Dr. Cayetano Coll y Toste for his diabetes. A patient screening sheet shows he also had high blood pressure. Castejón reported taking psychiatric medications (Risperdal, Clonazepam, Prozac), and for high blood pressure (Losartan) and diabetes (Amaryl). Tr. 291-300, 722-731.

A month later, Castejón was admitted and treated for bronchial asthma, from May 15 to May 20, 2013. He was provisionally diagnosed with chronic obstructive pulmonary disease upon admission. Other laboratory results indicate that mild congestive heart failure changes were suspected. Progress notes are illegible. Tr. 142-205, 553-616.

Later, on October 25, 2014, he was treated at the hospital for high blood pressure. Tr. 301-305, 732-742.

Castejón was also treated for bronchitis on July 14, 2015 at Pavia Hospital. Tr. 708-721.

*Dr. Jorge Robles Irizarry*

Dr. Jorge Robles Irizarry, psychiatrist, treated Castejón starting in 2009 for major depression with psychosis and schizoaffective disorder. Treatment included pharmacotherapy (Prozac, Klonopin, Risperdal) and individual psychotherapy for anxiety management and self-

control techniques. The notes available in the transcript are from 2013 on. Tr. 207-210, 448-449, 629-632.

On July 24, 2013, Castejón was calm, with poor visual contact, and diminished psychomotor activity. His affect and mood were labile. He was oriented in person and place, but only partially in time. His remote and recent memory were good, but his immediate and short term memory were not. He could not pay attention. His intellectual functions, judgment, and insight were poor. His hallucinations had decreased a bit with the use of medications, and he presented no suicidal or homicidal ideas. Tr. 208-209, 630-631.

According to Dr. Robles, Castejón needed supervision to do basic tasks such as getting dressed and groomed, eating, and taking his medications (activities of daily living). Castejón had very little ability to participate in group activities, only attended medical appointments, could not tolerate stress, and would rapidly decompensate (social functioning). Also, he could not follow instructions, do tasks, or finish tasks. He had no history of panic attacks. *Id.* Dr. Robles assigned a Global Assessment of Functioning ("GAF") score[2] of 40, and found an inability to handle funds. Tr. 207-210, 448-449, 629-632.

On February 18, 2014, Dr. Robles opined that Castejón's condition was worsening, with no prognosis of significant improvement. Tr. 207, 629. Then, on November 2, 2015, Dr. Robles reported to the SSA that Castejón's condition was of a permanent nature, with no hope of having any significant improvement. He recommended that Castejón not work because he was incapacitated, and that he should continue with psychiatric treatment. Tr. 211, 639.

All twenty-three progress notes between March 2014 and October 2015, and a progress note from April 2013, show that Castejón's diagnosis was major depression with psychosis. His appearance was adequate, and he was oriented, alert, and logical, with no suicidal or homicidal

---

[2] "GAF is a scale from 0 to 100 used by mental health clinicians and physicians to subjectively rate the social, occupational, and psychological functioning of adults.'" *Hernández v. Comm'r of Soc. Sec.*, 989 F. Supp. 2d 202, 206 f.n. 1 (D.P.R. 2013)(*quoting* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000) (DSM–IV–TR)).
 "A GAF score in the 31-40 range 'indicates [s]ome impairment in reality testing or communication … [o]r major impairment in reality testing or communication … [or] major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood.'" *López-López v. Colvin*, 138 F. Supp. 3d 96, 100 f.n. 6 (D. Mass. 2015) *quoting* SDM-IV at 32. "A GAF of 41-50 indicates 'serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifiting) OR moderate difficulty in social, occupations, or school functioning (e.g., no friends, unable to keep a job).'" *López-López*, 138 F. Supp 3d at 102 f.n. 7 *quoting* SDM-IV at 34.

ideas or hallucinations, but did present feelings of hopelessness. His GAF score was between 41-50, except for four progress notes that placed it between 31-40 (two of which specifically circled 40). Prognosis was reserved. Medications were prescribed. Tr. 212-262, 640-690.

**Procedural History**

On June 27, 2013, Castejón applied for disability insurance benefits, claiming to have been disabled since December 1, 2010 (alleged onset date) at 44 years of age due to depression, high blood pressure, diabetes, and a lung condition. Tr. 40-41, 422-428. He reported in a function report (Tr. 96-105, 458-465) that his condition impaired his ability to lift things, stand, hear, climb stairs, see, remember, complete tasks, pay attention and concentrate, follow instructions, and get along with others. He could follow written instructions (such as a recipe) but had difficulty following spoken instructions. He did not finish what he started (such as chores, a conversation, or watching a movie). His chronic muscle spasms limited his mobility and the amount of weight he could lift. His depression affected his relationship with others and his ability to concentrate. His diabetes affected his vision and caused numbness in his hands and legs. Tr. 102, 463.

As to personal care, his family had to remind him of the importance of looking presentable and taking his medications, although he had no desire to do so. He could do his own grooming, and his family helped him with meal preparation and laundry. Tr. 97-98, 459-460. He did not go out alone because he experienced panic attacks, changes in mood, irritability, dizziness, low sugar levels, and lack of concentration. He could drive and go shopping or to church, as long as he was accompanied, and manage money (pay bills, count change, and handle a savings account). Tr. 99, 461. He also occasionally walked for one hour, by medical recommendation, accompanied by a family member. Tr. 101, 462.

Castejón was contacted regarding his physical conditions. He clarified that his diabetes was controlled with medications and diet, and he had no organ damage. As to his blurry vision, he wore glasses, and had yearly follow-up visits. As to his chronic lower back muscle spasm, he had not suffered one in more than two years, and he used a muscle relaxer or over-the-counter medications (which he responded well to) as needed. Tr. 324-325.

The case was referred for mental consultative examination and non-examining case record evaluation. Tr. 324-325, 625. Dr. Jorge Suria, consultative psychiatrist, found on October 2, 2013 (Tr. 617-623) that Castejón showed signs of moderate depression (in his body posture, attitude, facial expression, and general demeanor) but was attentive, cooperative, communicative, coherent,

logical, oriented (in time, place, and person). His memory was intact, his attention and judgment were good, with no suicidal or homicidal ideas or perceptual disturbances, and able to handle funds. Tr. 325, 327, 621-622. Dr. Suria diagnosed major depressive disorder, recurrent, moderate, 296.32. Tr. 622.

Dr. Bárbara Hernández, psychologist, reviewed the medical evidence and assessed on October 28, 2013 that Castejón had a severe medically determinable impairment. Listing 12.04 Affective Disorders was considered. As per Paragraph "A" criteria, Castejón suffered from a depressive syndrome characterized by anhedonia or pervasive loss of interest in almost all activities, sleep disturbance, psychomotor agitation or retardation, decreased energy, or difficulty concentrating or thinking. As to Paragraph "B" criteria, Castejón had moderate restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation, each of extended duration. No evidence established the presence of paragraph "C" criteria. There was no evidence of mental hospitalizations, or partial admissions.

Dr. Hernández further assessed that Castejón's medically determinable impairments could reasonably be expected to produce his pain and symptoms, but not at the intensity, persistence or functional limiting effects he claimed. Based on the preponderance of the medical evidence, the case was considered moderate and Castejón retained the mental RFC to perform simple tasks. Tr. 326-327, 331. He could understand, remember, and carry out very short and simple instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. Castejón could work in coordination with or in proximity to others without being distracted by them, get along with coworker or peers without distracting them or exhibiting behavioral extremes, and interact appropriately with the general public. He could make simple work-related decisions, ask simple questions, request assistance, and respond appropriately to changes in the work setting. His ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; accept instructions and respond appropriately to criticism from supervisors; be aware of normal hazards and take appropriate precautions; travel in unfamiliar

places or use public transportation; and set realistic goals or make plans independently of others, was moderately limited. Tr. 328-330.

The claim was denied on October 29, 2013, with a finding that Castejón's mental RFC permitted him to perform the mental demands of unskilled work, but prevented him from performing past relevant work. Vocational Rule 204.00 used as a framework advised a finding of "not disabled." Tr. 81, 326, 331, 333, 349.

Castejón requested reconsideration but did not claim changes in his existing conditions, or new conditions. Tr. 335, 337, 474, 484. He did claim, in a new function report dated January 3, 2014, that now he could only walk for half an hour before needing to stop and rest (instead of one hour), and could not follow written or spoken instructions because he had concentration problems. He handled stress by avoiding situations that caused anxiety. Tr. 106-116, 466-473.

The case was referred to Dr. Eileen Zayas, internist, and Dr. Jesús Soto, psychiatrist. On May 7, 2014, both affirmed the initial assessment as substantially correct. The initial determination of not disabled was affirmed and the claim was denied upon reconsideration. Tr. 88-89, 340, 348, 354-355, 633, 635 637-638.

At Castejón's request (Tr. 356-362), a hearing before an ALJ was held on January 5, 2016. Tr. 37-80. A medical expert (Dr. Anette de Paz, clinical psychologist, Tr. 691-695), a vocational expert ("VE") (Dr. Hector Puig, clinical psychologist, Tr. 507-509), and Castejón testified. Tr. 27, 102-104.

Castejón testified that his depression started around 2008. He stopped working because he had difficulty resting. He would wake up fatigued, and with pain in his bones. He also suffered from diabetes, high blood pressure, and diverticulitis. He would experience numbness in his hands and legs, and blurry vision due to the diabetes. He could not concentrate, was forgetful (would forget verbal instructions but could follow written instructions), and anhedonic. Tr. 41-50.

He started losing clients at his auto repair shop because he would not timely fix the vehicles. Around the time he stopped working, he was already seeing a psychiatrist, but the medications did not help him do his job or improve his conditions. *Id.*

Castejón lived with his parents and sister. His sister gave him his medications because at times he would forget to take them or have suicidal thoughts, but he would inject himself and take the oral medication for the diabetes. His brother would drive him to medical appointments. Castejón did not drive because his diabetes caused blurry vision and he would get anxious, and he

did not help with house chores because he did not feel like working. He considered himself to be a calm person but would get easily irritated, and this brought him problems with family, clients, and people in general. In public, he would get impatient and suffer panic attacks. *Id.*

Dr. de Paz, the medical expert, testified at length about the medical evidence she reviewed in Dr. Robles's and Dr. Suria's records. In her opinion, Dr. Robles's diagnosis of recurring depression with psychosis and schizoaffective disorder was not supported by the progress notes and findings on the record, but the medications listed were consistent with that diagnosis. Dr. de Paz also disagreed with Dr. Robles's GAF assessment of 40 because someone with a GAF of 40 would need hospitalization, and Castejón had never been hospitalized for depression. The severity of Castejón's mental impairment did not meet or equal section 12.04 of the impairments listed (in Appendix 1, Subpart P of Regulation No. 4 (20 CFR, Part 404)). In Dr. de Paz's opinion, Castejón had moderate limitations in activities of daily living; moderate difficulty maintaining attention, persistence, and pace; and moderate restrictions in social functioning. Dr. de Paz further opined that Castejón was limited to simple, repetitive tasks, with no contact with public, and occasional contact with coworkers and supervisors. Tr. 51-65.

The ALJ asked Dr. Puig, the VE, if a person with Castejón's vocational profile, but limited to simple, repetitive tasks, no contact with the public, and occasional contact with coworkers and supervisors, could do Castejón's previous job in auto repair. The VE answered that Castejón could not because his past job required contact with the public (the clients) as he was his own boss, but could perform light or sedentary jobs such as mail addresser (sedentary), documenter (sedentary), or ticketer (light). The ALJ then asked if such a person who could additionally do the following could work: lift and carry twenty pounds occasionally and ten pounds frequently; sit, stand, and walk for six out of eight working hours; frequently climb ramps and stairs; occasionally climb ladders and scaffolds; and no exposure to unprotected heights but frequent exposure to moving mechanical parts. The VE answered that such a person could perform the jobs previously mentioned. Counsel for Castejón asked if such a person, but with a markedly reduced ability for attention and concentration (meaning an hour or less in an eight-hour work day), could work, and the VE answered no. 65-77.

On March 3, 2016, the ALJ found that Castejón was not disabled under sections 216(i) and 223(d) of the Act. Tr. 22. The ALJ sequentially found that Castejón:

(1) had not engaged in substantial gainful activity since his alleged onset date of December 1, 2010 through his date last insured (Tr. 24);

(2) had severe impairments: insulin-dependent diabetes mellitus and recurrent depression (Tr. 24);

(3) did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526)[3] (Tr. 25);

(4) could not perform past relevant work but retained the RFC to perform light work[4] with the following limitations: lift and carry twenty pounds occasionally and ten pounds frequently; sit, stand, and walk for six out of eight working hours; and frequently climb ramps and stairs, and occasionally climb ladders and scaffolds. He was also limited to performing simple repetitive tasks with no contact with the public and occasional contact with co-workers and supervisors (Tr. 26); and

(5) as per his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Castejón could perform (such as addresser – sedentary unskilled work, documenter – sedentary unskilled work, and ticketer – light unskilled work). Tr. 30-31.

In considering the severity of Castejón's mental impairment in terms of the criteria of listing 12.04 for steps two and three, the ALJ found that Castejón had the following restrictions in relation to the "paragraph B" criteria.[5] In activities of daily living, Castejón had moderate restriction. He spent the day sedentarily in the house, and did not perform house chores, but could care for personal grooming and hygiene with reminders. He had moderate difficulties in social

---

[3] The ALJ considered listing 9.08 for the diabetes mellitus condition, and listing 12.04 for the mental impairment. Tr. 25.

[4] Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of up to ten pounds, walking or standing up to six hours of an eight-hour workday, and some pushing or pulling. Light work includes sedentary work, or work that requires lifting no more than ten pounds at a time, sitting for at least six hours out of an eight-hour work day, occasional walking and standing for no more than about two hours a day, and good use of the hands and fingers for repetitive hand-finger actions. 20 C.F.R. § 404.1567(a) & (b); SSR 83-10.

[5] Listing 12.04B requires: "marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration." The mental impairment must cause at least two "marked" limitations, or one marked limitation and "repeated" episodes of decompensation, each of extended duration. Tr. 25-26.

functioning. Castejón informed that he hardly socialized because of his depression and pain from cervical and lumbar spasm, but he could go out to medical appointments and pay bills. Castejón had moderate restrictions in concentration, persistence or pace. He had adequate thought process, and there was no evidence of intellectual or personality deteriorations, or perceptual disturbances or delusions. And no episodes of decompensation, of extended duration. His mental treatment has been ambulatory. Tr. 25-26.

In assessing the mental RFC, the ALJ considered the medical evidence in accordance with 20 C.F.R. 404.1529 and SSRs 96-4p, 96-7p, and 96-8p, and the opinion evidence in accordance with 20 C.F.R. 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. Tr. 26.

The ALJ further found that Castejón's impairments could reasonably be expected to cause his alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. Tr. 28. The ALJ also noted that the diagnosis of major depression with psychotic features was consistent with the prescribed medications, and that the signs and symptoms of anhedonia, insomnia, lack of energy, feelings of worthlessness, and difficulty concentrating and thinking were mentioned by both Dr. Suria and Dr. Robles in their respective reports to the SSA, but that these symptoms were not contained in Dr. Robles's treatment notes. Tr. 30.

The ALJ gave great weight to Dr. de Paz's opinion at the hearing, finding that her opinions were consistent with the substantial evidence contained in the medical record. The ALJ afforded little weight to Dr. Robles's opinion regarding a GAF of 40 because of Dr. de Paz's testimony that someone with a GAF of 40 would need hospitalization, and Castejón had never been hospitalized for depression. The ALJ also discarded Dr. Robles's opinion that Castejón was disabled because that issue was reserved to the Commissioner of Social Security. The ALJ afforded reduced weight to the State Agency psychologists, Dr. Hernández and Dr. Soto, finding that they did not adequately consider Castejón's subjective complaints, symptoms and limitations as per the record. Tr. 29.

On March 3, 2016, Castejón was notified of the unfavorable decision. Tr. 16-18. Castejón requested review of the ALJ's decision on May 2 (Tr. 420), which the Appeals Council denied on November 2, 2017, rendering the ALJ's decision the final decision of the Commissioner. Tr. 1. The present complaint followed. Docket No. 1.

# DISCUSSION

This court must determine whether there is substantial evidence to support the ALJ's determination at step five in the sequential evaluation process that based on Castejón's age, education, work experience, and RFC, there was work in the national economy that he could perform, thus rendering him not disabled within the meaning of the Act. Here, the ALJ determined that through the date last insured, and based on the record evidence, Castejón could not perform past relevant work but retained the RFC to perform light work with the following limitations: lift and carry twenty pounds occasionally and ten pounds frequently; sit, stand, and walk for six out of eight working hours; and frequently climb ramps and stairs, and occasionally climb ladders and scaffolds. He was also limited to performing simple repetitive tasks with no contact with the public and occasional contact with co-workers and supervisors. Tr. 26. A review of the hearing transcript shows that this RFC finding was used by the ALJ to pose the hypothetical question to the VE.

Castejón argues that the ALJ erroneously based his RFC finding on the testimony of Dr. de Paz, the medical expert, instead of assigning greater weight to the treating psychiatrist Dr. Robles's medical evidence, and by doing so, the hypothetical question posed to the VE did not accurately reflect his limitations. Castejón also questions why the RFC assessment was not specific as to the amount of time required to concentrate in performing simple, repetitive tasks, and points to the question posed by the attorney at the hearing, whether a person who can concentrate for one hour or less may work, to which the VE answered that there were no jobs that such a person could perform.

The ALJ is required to express a claimant's impairments in terms of work-related functions or mental activities, and a VE's testimony is relevant to the inquiry insofar as the hypothetical questions posed by the ALJ to the VE accurately reflect the claimant's functional work capacity. *Arocho v. Sec'y of Health and Human Services*, 670 F.2d 374, 375 (1st Cir. 1982). In other words, a VE's testimony must be predicated on a supportable RFC assessment. *See* 20 C.F.R. § 404.1520(g)(1). An RFC assessment is "ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (*citing* 20 C.F.R. §§ 416.927(e)(2), 416.946). But because "a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Id.* The regulations require an ALJ to carefully consider a medical source's

opinion about any issue. SSR 96-5p, 1996 SSR LEXIS 2.[6] Also, when determining which work-related limitations to include in the hypothetical question, the ALJ must: (1) weigh the credibility of a claimant's subjective complaints, and (2) determine what weight to assign the medical opinions and assessment of record. *See* 20 C.F.R. §§ 404.1527, 404.1529. The ALJ should give "*more* weight to opinions from [a claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)." 20 C.F.R. § 404.1527(c)(2).

With regards to the mental portion of the ALJ's RFC assessment, a claimant seeking disability benefits based upon mental illness must establish that it impedes him from performing the basic mental demands of competitive remunerative unskilled work on a sustained basis, that is: (1) understand, remember, and carry out simple instructions; (2) respond appropriately to supervision, coworker, and usual work situations; and (3) deal with changes in a routine work setting. *Ortiz*, 890 F.2d 520, 526 (1st Cir. 1989) (*quoting* SSR 85-15); *See* 20 C.F.R. § 404.1568; Social Security Ruling ("SSR") 96-9p, 1996 WL 374185, at *9 (SSA 1996). For a claimant to understand, carry out, and remember simple instructions in any job, he must have the mental ability to remember very short and simple instructions, and the "ability to maintain concentration and attention for extended periods (the approximately 2-hour segments between arrival and first break, lunch, second break, and departure)." SSA's Program Operations Manual System ("POMS") DI 25020.010(B)(2)(a). "Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00(C)(3). As defined above, an ALJ's RFC assessment is based on the completion of tasks within the extended periods of the work day, and the ALJ is not required to phrase the RFC finding in terms of hours per day. I find that Castejón's argument that the ALJ erred in not specifying in the RFC finding the amount of time required to concentrate in performing simple, repetitive tasks is without merit, and as I discuss below, there is substantial evidence in the record from different treating and consultative sources, including Castejón's own testimony, that supports a finding that Castejón

---

[6] The SSA recently revised the rules for evaluation of the medical evidence, and the final rules became effective on March 27, 2017 (*see* 82 FR 5844), thus rescinding SSR 96-2p, SSR 96-5p, SSR 96-6p, SSR 06-03p effective on that date. Therefore, in this case, the treating physician rule applies.

could understand, carry out, and remember simple instructions, with no contact with the public but with occasional contact with co-workers and supervisors.

Castejón reported and testified to having difficulty paying attention, concentrating, and following spoken instructions, and although he could follow written instructions (such as a recipe), he could not finish what he started. He took care of his own grooming and could perform certain chores such as meal preparation and laundry with his family's help. Being around others made him irritable and caused panic attacks, but he was assisted and supervised in activities of daily living by his family members.

According to Dr. Robles, treating psychiatrist, Castejón could not pay attention, follow instructions, or finish tasks. He needed supervision to perform basic daily living tasks, had little ability to participate in group activities, and could not tolerate stress because he would rapidly decompensate. Castejón's GAF score was 40 as per a report redacted by Dr. Robles for the SSA, and between 41-50 as found in the progress notes. A GAF score in the 41-50 range indicates moderate difficulties in social and occupational functioning. *López-López*, 138 F. Supp 3d at 102 f.n. 7 *quoting* SDM-IV at 34. Dr. Robles assessed that Castejón's condition was permanent and would not improve, and recommended that Castejón not work.

In contrast, Dr. Suria, consultative psychiatrist, found that, while Castejón showed signs of moderate depression in his demeanor, his memory was intact, his attention and judgment were good, and he was cooperative and communicative. Dr. Hernández, the non-examining physician, offered a less restrictive RFC assessment than the one assigned by the ALJ, with Dr. Soto affirming, in which Castejón retained the mental RFC to understand, remember, and carry out very short and simple instructions; work with others; interact appropriately with the general public; and respond appropriately to changes in the work setting.

Dr. de Paz, psychiatric expert at the hearing, testified that, as per the medical evidence on the record, Castejón could perform simple, repetitive tasks, with no contact with the public, and occasional contact with coworkers and supervisors. Dr. de Paz also testified that Dr. Robles's diagnosis of recurring depression with psychosis and schizoaffective disorder was not supported by the record, but that the medications listed were consistent with that diagnosis. Dr. de Paz also disagreed with Dr. Robles's GAF assessment of 40 because someone with a GAF of 40 would need hospitalization, and Castejón had never been hospitalized for depression. In Dr. de Paz's

opinion, Castejón had moderate limitations in activities of daily living; moderate difficulty maintaining attention, persistence, and pace; and moderate restrictions in social functioning.

I also note that Castejón has a lengthy history of prescribed psychiatric medications. While Castejón testified that the medications did not improve his conditions, Dr. Robles noted that Castejón's hallucinations had decreased with medications.

As to Castejón's claim that the ALJ gave more weight to Dr. de Paz's opinion than to his treating physician's opinion,[7] the regulations require an ALJ to carefully consider a medical source's opinion about any issue (SSR 96-5p, 1996 SSR LEXIS 2) and give "*more* weight to opinions from [a claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)." 20 C.F.R. § 404.1527(c)(2). Factors to be considered are set forth in 20 C.F.R. §§ 404.1527(c), which include:

(1) the examining relationship (more weight is given to the medical source who has examined the claimant);

(2) the treatment relationship (more weight is given to a treating source's opinion because she/he can provide a detailed, longitudinal picture of a claimant's impairments, including the length of the treatment relationship and the frequency of treatment, and the nature and extent of the treatment relationship);

(3) the supportability of the treating source's opinion with relevant evidence such as medical signs and laboratory findings;

(4) the consistency of the treating source's opinion with the record as a whole; and

(5) the area of specialty of the medical source offering the opinion. 20 C.F.R. § 404.1527(c).

The ALJ summarized the medical evidence and self-reported symptoms, and then assigned the following weights. The ALJ gave great weight to Dr. de Paz's opinion at the hearing, finding

---

[7] Additionally, Castejón catalogued Dr. de Paz as "biased" against Dr. Robles and his medical reports. He argues that, albeit the ALJ admitted counsel's objection regarding a statement made by Dr. de Paz about Dr. Robles, the ALJ failed to follow the procedure set forth in 20 CFR 404.940 of Regulations No. 4. However, this procedure applies to ALJs as impartial and unbiased fact-finders, and not to testifying medical experts. Furthermore, the Social Security Administrations Hearings Appeals and Litigation Law Manuel ("HALLEX") offers an internal guide for ALJs to rule on objections at the hearing, which the ALJ here did. *See* HALLEX I-2-5-30(B) "[The claimant] may object to the expert based on perceived bias or lack of expertise. The ALJ will respond to any objections, either in writing or on the record at the hearing."

that her opinion was consistent with the substantial evidence contained in the medical record. The ALJ specifically afforded little weight to Dr. Robles's opinion regarding a GAF of 40 because Dr. de Paz testified that someone with a GAF of 40 would need hospitalization, and Castejón had never been hospitalized for depression.[8] The ALJ also discarded Dr. Robles's opinion that Castejón was disabled because that determination was reserved to the Commissioner. The ALJ did not comment on the rest of Dr. Robles's record, but stated that he considered the evidence of record as a whole in the RFC assessment. The ALJ afforded reduced weight to the State Agency psychologists, Dr. Hernández and Dr. Soto, finding that they did not adequately consider Castejón's subjective complaints, symptoms and limitations. Tr. 29.

The opinion of a treating physician is presumed to carry controlling weight as long as it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Id.*; SSR 96-2p, 1996 SSR LEXIS 9. The ALJ did not give controlling weight to Dr. Robles's opinion, finding that the severity of the restrictions offered by Dr. Robles were inconsistent with other medical evidence in the record, which is a valid reason to discount a medical assessment. Once the ALJ decides what weight to give a treating source, under the "good reasons" requirement, he is required to include in the notice of determination "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p. The ALJ may reject a treating physician's opinion when it is not supported by clinical evidence or is inconsistent with other evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Arias v. Comm'r Soc. Sec'y*, 70 F. App'x 595, 598 (1st Cir. 2003). The

---

[8] The SSA's administrative memorandum AM-13066 advises adjudicators that a GAF score should not be dispositive of impairment severity. GAF scores were discontinued in the current Diagnostic and Statistics Manual of Mental Disorders (5th edition) ("DSM-V"), which was published in 2013, but were still part of the DSM-IV-TR at the time of Castejón's treatment. Because the GAF scores are no longer used in the DSM-V, the SSA directed adjudicators through the AM-13066 to continue receiving and considering GAF scores as they would with other opinion evidence, but that the score must have supporting evidence to be given significant weight. *Valentín-Incle v. Comm'r of Soc. Sec.*, Civ. No. 15-2137 (MEL), 2018 U.S. Dist. LEXIS 215060, 2018 WL 6721340, at *10 n.2 (D.P.R. Dec. 19, 2018) (citations omitted).

I note that the ALJ used the GAF scores in the record, in conjunction with other evidence, as part of the RFC discussion and non-disability findings. The ALJ does not exclusively rely on the GAF scores to assess the severity of Castejón's mental condition, but makes reference to them in determining his functional abilities and limitations.

ALJ's decision contains a lengthy summary of the treating, examining, and consultative opinions the ALJ considered, and a specific statement of the reasoning behind the weight assigned, which I find was sufficient to give the court notice of the weight given to the medical opinions.

With regards to Castejón's physical limitations, Castejón additionally argues that the ALJ did not assign weight to evidence of the physical impairments, and that the ALJ committed error in omitting to discuss how his respiratory conditions imposed environmental restrictions. Castejón does not argue in his memorandum how these conditions impaired his ability to perform light work. There is some evidence in the record that Castejón was treated in May 2013 at Hospital Dr. Casteyano Coll y Toste for bronchial asthma, and in July 2015 at Pavia Hospital for bronchitis. However, there is no evidence of continuous treatment for respiratory conditions. Additionally, I note that Castejón did not offer testimony regarding respiratory limitations.

The ALJ noted that Castejón's main physical condition is diabetes, which he controlled with medications. Tr. 27. The ALJ did not make a finding that Castejón had a severe respiratory impairment, only that insulin-dependent diabetes mellitus was a severe impairment (along with recurrent depression). Tr. 24. Also, according to the record in this case, Castejón was contacted regarding his physical conditions. He clarified that his diabetes was controlled with medications and diet, and he no difficulties or organ damage. As to his blurry vision, he wore glasses, and had yearly follow-up visits. As to his chronic lower back muscle spasm, he used a muscle relaxer and had not suffered one in more than two years, and although currently it rarely happened, he responded well with over-the-counter medications. He did not mention respiratory conditions. Tr. 324-325. Therefore, I find this argument to be meritless.

Ultimately, it is the Commissioner's responsibility to determine issues of credibility, draw inferences from the record evidence, and resolve conflicts in the evidence (*see Ortiz*, 955 F.2d at 769 (citing *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981); *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 141 (1st Cir. 1987)). After thoroughly and carefully reviewing the record, I find that there is substantial evidence to support the ALJ's RFC finding.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.

This report and recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court **within fourteen days** of its receipt. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 26th day of August, 2019.

*s/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge